IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | |
| | * | CRIMINAL NO. GLR-21-0038 |
| v. | * | |
| | * | |
| CHARLES NABIT, | * | |
| | * | |
| Defendant. | * | |
| | ******* | |

**GOVERNMENT'S SUPPLEMENTAL BRIEFING IN SUPPORT OF SENTENCING RECOMMENDATION OF THIRTY-SIX (36) MONTHS OF INCARCERATION**

The United States of America, by and through its attorneys, Jonathan F. Lenzner, Acting United States Attorney for the District of Maryland, and Mary W. Setzer and P. Michael Cunningham., Assistant United States Attorneys, submit this supplemental briefing in support of its recommended sentence, and in support thereof, states as follows:

**I.   History and characteristics of the defendant**

The Government implores the Court not to be distracted by the number of attempts by the defense to shift the focus of this case toward the Government, and away from the actions of the defendant. The defendant has claimed that the Government has presented relevant information about his conduct to the Court in advance of the sentencing, "so that the media will repeat it in media coverage of the case. The purpose, to further humiliate Mr. Nabit and cause public humiliation." The Government takes seriously its obligation to provide the Court with all relevant information for consideration in imposition of sentence, which is the actual purpose for which the Government presents information about the defendant to the Court. As the Court is well-aware, under 18 U.S.C. § 3553(a), a Court is required the consider both the nature and circumstances of the offense, and the history and characteristics of the defendant.

1

As such, in advocating for its recommended sentence, the Government invariably provides the Court with information about a defendant's conduct that may not have been included in the Stipulation of Facts of a plea agreement, especially when that conduct involves victims of the very case before the Court for sentencing. It is both wholly inaccurate and disingenuous to imply that the defendant rightfully may provide information to the Court about positive things he may have done during his life, but the Government cannot and should not provide the Court with further information about the defendant's exploitative behavior towards vulnerable women.

What's more, the fact that the defendant has done good things throughout his life does not make this a unique case. It is highly unlikely that there has been a single defendant who has come before the Court who has not done positive things in his life. The Government does not discredit the defendant's many, very public, financial contributions to charitable endeavors. But who was the defendant when he thought no one was watching? He was not simply a man who engaged the services of prostitutes. That is not why the defendant found himself a federal defendant. The defendant was a former owner of a drug treatment facility, who regularly saw numerous vulnerable, drug-addicted young women for commercial sex, knowing that the money he paid them was going toward supporting their drug addictions. The defendant boasted to federal investigators about having owned a drug treatment facility similar to the way he boasts about his charitable endeavors. He boasted to investigators that he was a "pillar of the community" (as though this made him untouchable) in the same way that he made his status known to victims. This has routinely made people afraid to speak out about his treatment of them. Further, despite his continued unwillingness to admit it, the defendant lied to federal investigators. As just one minor example, after having been served with a grand jury subpoena on November 15, 2019, the

defendant contacted agents via phone and falsely claimed that he did not know any of the names of the women he met with for commercial sex because "they always go by their stage names."

Further, in his sentencing reply memorandum, the defendant claims in one breath that he did not let the victims know his status in the community because it would have made him a prime target for threats that they would go public about involvement in commercial sex. ECF 56 at 3. In the next breath, the defendant claims that "the street smart professional sex workers recognized that Mr. Nabit had money" and they used that knowledge to get more money from him. ECF 56 at 4. Which is it? Did the victims know or did they not know? The defendant repeatedly takes entirely inconsistent positions like this about how the Court should see the evidence, depending upon what he believes makes him look more favorable in the moment.[1]

## II. Perspective of the victims & additional information

While the Government's initial sentencing filings focused primarily on the defendant's actions and his own words, objectively demonstrating his mistreatment of the victims and his exploitation of them, it has now become important to provide the Court with further information regarding the perspective of the victims.

First, the Government recognizes the sad reality that because the women the defendant saw for commercial sex were drug-addicted and vulnerable, and thus very complex, there is an inherent bias that is apparently ripe for the defendant's attempt to convince the Court that *he* was victimized or exploited by the women. The defendant is quick to point out that he has accepted responsibility and has sought intensive treatment, but yet the tenor of his filings demonstrates a minimization of

---

[1] As another example, which the Government cited in its Reply Memorandum, the defendant erroneously asserts that being a customer of prostitutes is not a federal crime and that his conduct does not constitute a violation of 18 U.S.C. § 1952. Confusingly, the very next paragraph he writes, "it would be appropriate to examine the Guidelines to determine what sentence is provided for in the Guidelines for 18 U.S.C. § 1952(a)(3), the conduct at the heart of this case." ECF 28 at 34. The defendant agreed in the plea agreement that he did, in fact, violate 18 U.S.C. § 1952, making this inconsistent argument all the more disconcerting.

his wrongdoing. He complains, "each of the women for whom Mr. Nabit was a customer became a commercial sex worker for reasons wholly unrelated to Mr. Nabit.  At least some are still involved in prostitution.  Victim 4…is currently advertising her services on the internet."  And he even goes so far as to attach a commercial sex advertisement for Victim 4.

Federal Rule of Evidence 412 prohibits a defendant from introducing evidence of, or asking direct or cross examination questions about, the sexual behavior or sexual predisposition of a victim or witness in a case involving sexual misconduct, barring very specific circumstances which are inapplicable in this case. The purpose of Rule 412's restrictions is "to safeguard the alleged victim against the invasion of privacy, potential embarrassment and sexual stereotyping that is associated with public disclosure of intimate sexual details and the infusion of sexual innuendo into the fact-finding process." Fed. R. Evid. 412 advisory committee's note to 1994 amendment. *United States v. Wardlow*, 830 F.3d 817, 820 (8th Cir. 2016), *cert denied* (upholding the preclusion of evidence under Rule 412, that a victim had a relationship with another commercial sex customer).  One of the reasons that the existence of Rule 412 is necessary is because statements like those the defendant has made about Victim 4's continued engagement in commercial sex are common among defendants who seek to distract a fact-finder from focusing on their own wrongdoing by attempting to smear a victim's reputation. The prior or continued sexual conduct of a victim does not negate or minimize the egregiousness of the defendant's interactions her, particularly when he *used* the vulnerability of the victims' life situations in order to get what he wanted from them.

It should be noted that when Victim 4 was advised about the defendant's arrest, she stated that he had been a "big financial contributor" to her drug habit and that he had been giving her money up to a few weeks prior when she entered into drug rehab.  When Victim 1 was advised

that the defendant had been arrested, she told investigators that she was relieved. She stated that she would be out of drug rehab soon and she had a lot of "triggers" in the community and defendant was one of them. Victim 1 advised that the defendant was verbally aggressive and that she would often cry throughout the dates.

During this investigation, the Government also interviewed Victim 8, not referenced in the Stipulation of Facts, who stated that every time she was with the defendant, she would use his bathroom several times to use cocaine. She indicated that the defendant paid her less money the last two times she was with him because he said that "he was taking risks to have her at his office knowing that she was using drugs." Victim 8 also said that she was uncomfortable with the cameras the defendant used to record the sex, so she was not willing to do as much sexually, which was another reason he paid her less money. Sadly, when Victim 8 was asked whether they had protected or unprotected sex, she stated that it was initially protected, but then the defendant would take the condom off at the last minute and try to reinsert his penis inside her vagina. Victim 8 would get upset and the defendant would "coax" her back down on the couch so that they could continue to have sex. Victim 8 indicated that the defendant would yell and get upset if something did not go his way and would tell her that he had a lot of money and power. Victim 8 stated that she did not always feel safe at the defendant's office. Victim 8 advised that Victims 9 and 10 also had commercial sex with Nabit and that Victim 9 "was a heavy heroin user and felt like she had less say about the cameras because she needed the money to support her drug habit."

Victim 5 told investigators that the defendant would get mad and yell if things did not go his way and that he was forceful and would threaten her and degrade her. Victim 5 also stated that the defendant had grabbed her arms before. Victim 5 snorted heroin in front of the defendant in his office and he knew he was providing her money that she was using to buy drugs. Victim 5

confided in the defendant about having been sexually abused when she was a child, and in response, the defendant told her she "had daddy issues." For a short period of time, Victim 5 had gotten clean from drugs and she indicated that the defendant did not want to see her during this period of time because he "only wanted to mess with people who had an addiction to hold over their heads."

The mother of Victim 7, who is deceased from a drug overdose, advised the Government that that the defendant has been giving her $2,000 per month since Victim 7's child was born for her to "keep her mouth shut." Victim 7's mother informed investigators that she recently had lunch with the defendant and his attorney (not his criminal attorney, but the attorney who represents him on civil matters and who has written a character letter for the defendant's sentencing). At this meeting, the defendant and his attorney offered her a substantial sum of money to have a clean break, but Victim 7's mother stated that she refused to sign anything.

Of course, the defendant can point to occasions where he gave the victims money outside of the context of sexual encounters and where he may have said nice things to them. But just as a domestic abuser is on good behavior at times and commits positive acts in order to keep a victim in a relationship, these acts do not make him any less of an abuser. It is these very acts of kindness interspersed with the abuse that make the relationship so dangerous, exploitative, and abusive.

### III.  Conclusion

The defendant has attempted to complicate this case for the Court in a way that approaches a failure to fully accept responsibility. The Government does not request a sentence of thirty-six (36) months in this case because it claims that such a sentence is necessary to protect the public from future crimes of the defendant. Rather, the Government gives the defendant the benefit of the doubt and accepts that this case has forced him to attempt to rehabilitate his life. The

Government requests a sentence of thirty-six (36) months of incarceration in order to promote the respect for law, provide just punishment to the defendant, and to afford adequate deterrence to criminal conduct. The Guidelines in this case call for a sentence between twelve (12) and eighteen (18) months of incarceration. Anything less would demonstrate to the public that the criminal justice system does not punish those who contribute to the demand for commercial sex, let alone those who contribute to the demand in such a pervasive and extremely egregious way.

WHEREFORE, for the reasons stated herein, the Government respectfully requests that the Court impose a sentence of thirty-six (36) months of incarceration.

Respectfully submitted,

Jonathan F. Lenzner
Acting United States Attorney

By: _____/s/_____
Mary W. Setzer
P. Michael Cunningham
Assistant United States Attorneys